Mr. Justice Mac Arthur
delivered the opinion of _ the court.
The object of the bill in this case is to set aside a certain deed of trust and to re-instate the trust, and for a sale of the property. The circumstances and facts established by the evidence are as follows :
Prior to October, 1872, the complainant, Mary J. Wright, was the equitable owner of the property in controversy, but the title was in her son, Irwin B. Wright, and her husband, the said John W. Wright, was agent for them both in business concerning the premises.
In this last capacity John W. Wright sold, on the 8th of March, 1872, this lot to Mary E. Riggs and Homer Riggs *344 for $4,800, of which $200 was paid before the deed to Mrs. Riggs was delivered. This deed was executed by said Irwin B Wright and wife, to Mary E. Riggs and recited a consideration of $4,800. It was delivered and recorded December 11, 1872.
On the day last mentioned Homer and Mary E. Eiggs made to John W. Hunt as trustee, a deed of trust on the lot securing the payment of the balance of the purchase money, as evidenced by note payable to John W. Wright; such pay-to be made quarter-yearly in sums of $100 each, with lawful interest; the first quarterly payment to be made three months after the 6th of September, 1872. This deed of trust was recorded the 11th December, 1872.
When this deed of trust so remained of record, add unsatisfied, to wit, July 6, 1874, Riggs and wife made to defendants, Walter and Samstag, as trustees for Gersdorff, defendant, another deed of trust on the same lot, securing a note for $1,000 to Gersdorff.
Riggs and his wife entered into possession of the property at the time it was conveyed to them, and had the use and occupation thereof up to April 12, 1876, and such payments were made on the note to Wright as amounted to a little over the sum of $1,300, but after applying the same to the payment of interest on the note it would not materially reduce the principal on the 12th of April.
At this last date, Riggs and wife, having no other property than this lot, and being in default in payment of the debt to Wright, Wright agreed with them to take back the property by a deed to Mrs. J. Wright, wife of John W. Wright, and to cancel the debt for purchase money ; this deed was made by Riggs and wife to Mary J. Wright, dated 12th April, 1876, and recorded 12th May, 1876, and the note to Wright and trust to Hunt were then cancelled and surrendered. The deed to Mary J. Wright contained a covenant in these words:
“ And the said Mary E. Riggs and Homer Riggs, her husband, and the said J. W. Hunt, trustee, parties of the first part, for themselves, their heirs, executors and administrators, do hereby covenant, promise, and agree to and *345 with the said party of the second part, her heirs and assigns, that they, the said parties of the first part, and their heirs, shall and will warrant and forever defend the said parcel of ground and premises and appurtenances unto, &c., * * * from and against the claims of all persons claiming or to claim, * * * by, from, under, or through them.”
The court also found the following facts to be established by the testimony ; that when the trust to Walter and Sam-stag was given, the trust to Hunt was of record and in full force; that Riggs and wife were wholly destitute of any other property, except this lot, on the 12th of April, 1876, and have so continued insolvent ever since ; that when Wright surrendered said note and trust to Hunt to secure its payment, it was a transaction in the nature of a release, and an agreement to let Riggs and wife off from their said indebtedness, and that this was done on the part of John W. Wright in consideration of getting the property back unincumbered ; that neither John W. Wright, nor Mrs. Wright, nor Hunt, who joined with the Riggs in the release, had any knowledge, actual or personal, of the existence of the trust to Walter and Samstag, when it was released to Hunt, and that the release was executed, so far as the complainants are concerned, on the faith and understanding that Riggs had not incumbered the property, and that had such incumbrance to Gersdorff been known to the complainants they would not have surrendered the trust to Hunt, or the note secured by it; that the trust to Walter and Samstag was wellknownto Mr. and Mrs. Riggs at the time of such surrender, but neither of them gave the slightest intimation of its existence, when they must have known that Wright knew nothing of the incumbrance, and would not have surrendered his security had Riggs informed him of it; that Gersdorff has parted with no value, nor incurred any new responsibility since the surrender of the Hunt trust; that the real estate -was not more than sufficient to pay the indebtedness to Wright,and that the Riggs had no other property out of which the debt could be paid, and that Wright took back the property because they could *346 get nothing else for the indebtedness, and upon the implied understanding that the property was not incumbered by any subsequent lien, and that the note was surrendered and the land conveyed back for the purpose of avoiding the expense of advertising it for sale and foreclosing the trust deed.
The difference in the testimony of Wright and Riggs is not very material, for the latter admits the agreement to release the premises, and that he gave no intimation of the Gersdorff lien which he had created. He does not profess that Wright had any personal notice of that circumstance, and he certifies that he made the re-conveyance at the request of Wright who threatened to sell the property under the terms of his said trust.
Upon this statement of the facts, which we think, is established by the evidence, it must be apparent that Riggs intended to mislead and defraud the complainants, and that but for this fraud the lien of the first trust would not have been discharged. The general question is, can we restore this lien ? We think it quite well settled that where a security has been released by the mistake of the party seeking relief and the fraud of the defendant combined, equity will restore the lien, especially where no supervening equities can be'disturbed. The only purpose of the plaintiffs was to get back the property as they could not hope to get the purchase money, and the note for what remained unpaid amounting to $4,600, was surrendered. Wright offered to take $2,500 for the note. This was delivered, and there can be no doubt that the property was then redeeded upon the understanding of complainants that the land was unencumbered except by the trust to Hunt, and such must have been the understanding of the agreement which Riggs intended he should have.
It is contended that the Riggs were guilty of no fraud by remaining silent. It is to be noted, however, that the Gersdorff lien was created by the act of Riggs subsequently to that of the complainant, and when the latter was in full force, and this fact was, therefore, peculiarly within the knowledge and conscience of Riggs. His note was sur *347 rendered, and he was not only relieved from that obligation, but from the risk of a deficiency in case the property were sold. The case w'as that of a release in substance, and the principle applies to it which is announced in Story’s Equity Jurisprudence, sec. 217.
The author discusses in previous sections the doctrine when concealment of circumstances amounts to a fraud, and continues : “ The same principle applies in all cases where the party is under an obligation to make a disclosure, and conceals material facts. Therefore, if a release is obtained from a party in ignorance of material facts, which it is the duty of the other side to disclose, the release will be held invalid.”
In other words, the release in this case was executed under false impressions as to the real state of facts. The fact concealed had been created by Riggs himself. He was therefore responsible for the fact, and was not bound to disclose it. That it w'as material is not denied ; and we think that under these circumstances, to adopt the language of Judge Story, the omission to make it known was equivalent to an affirmation that the fact did not exist.
It is also contended that the relief prayed for in this bill is on the ground of fraud and not mistake. The objection is overcome by what has already been said, for we think that testimony shows both fraud and mistake within the sense of those terms in a court of equity. We are also of opinion that the rule requiring a party who seeks to rescind a contract on the ground of mistake, to show that he has exercised due diligence, has no application to this case, for while a careful man may guard against mistake, he may not be able to do so against a person who seeks to defraud or cheat him.
Upon the whole we think the decree below should be affirmed.